CHARLES PRIMM *et als.*, Appellants, *v.* THOMAS A. WALKER, Respondent.

1. *Lands—Tenants in common—Conveyance.*—One tenant in common cannot convey, by metes and bounds, a distinct portion of the whole tract held in common with others, so as to prejudice his co-tenants or their assignees, although the deed may bind him, and those claiming under him, by way of estoppel. But where several persons are tenants in common of separate and distinct parcels of land, one of the tenants may convey all his undivided interest in any one of the distinct parcels.

2. *Lands — Tenants in common.* — Where one tenant in common laid out an "addition," dividing the land into lots and blocks, and filed a plat dedicating the streets and alleys in accordance with the statute, and the other tenant recognized the addition and plat, and made deeds for his undivided interest

in several lots, these acts of the parties have the effect to make a division of the tract, as between themselves, into several and distinct parcels, and they become tenants in common of each several parcel or lot by itself.

3. *Ejectment—Practice—Parties.*—Where several plaintiffs sue in ejectment, and one is shown to have no title to the premises, the plaintiffs cannot jointly recover judgment; but, by dismissing the petition as to the plaintiff shown to have no title, the suit may proceed, and the remaining plaintiffs may recover.

### Appeal from St. Louis Land Court.

*I. T. Wise,* for appellants.

I. The instruction relating to title, given for defendant, decided that the deeds of Alfred Skinner to Bailey's trustees, and to Blumenthal, embraced in their description the land in controversy, and thus took from the jury the whole case. The court could not, as a matter of law, decide that said deeds conveyed the premises in suit, on the evidence presented in the case.

II. The court, in giving that instruction, erred in deciding that the land in controversy was conveyed by said deeds of Alfred Skinner or his grantees. It is not described in, or properly included within, the boundaries set forth in said deeds. Said deeds did not convey the interest owned by John P. Reilly.

III. A tenant in common cannot legally convey his interest in a particular portion of the premises held in common, setting forth such portion by metes and bounds.

IV. The words " the middle of the creek in its natural channel when the pond is exhausted," as used in the deeds of the mill tract, call for the natural channel of the creek when the pond is down ; and for the natural channel, as distinguished from any channel existing after artificial obstructions have caused the destruction or filling up of its natural bed.

*Gantt,* and *Glover & Shepley,* for respondent.

HOLMES, Judge, delivered the opinion of the court.

The land sued for was bounded on the south by a line distant one hundred feet southwardly from Spruce street ex-

tended westwardly from Reilly's addition to the city of St. Louis, on the east by the west line of said addition, on the north by Spruce street extended westwardly, and west by a line parallel with and distant eastwardly from Tayon avenue one hundred feet. This description would include a portion of the two lots numbered 58 and 59 of Reilly's addition, which were bounded east by Skinner street, and west by "the channel of Spring creek, called Chouteau's pond," as they were described in the deeds given in evidence by the defendants, and which, if they were valid, conveyed the interest of Alfred Skinner in these lots, and in the land in controversy, provided that by this description the lots were to be bounded on the west by the middle thread of the channel of the creek or pond. The addition had been laid out by John P. Reilly, who was tenant in common with Alfred Skinner of the original tract, the lot No. 3 of the partition of the estate of Aug. Chouteau; and the deeds under which they claimed bounded the tract on the west by "the middle of the creek in its natural bed when the pond is exhausted."

It does not appear that any partition had ever been made between the co-tenants. Reilly's undivided interest in the lots of his addition had descended to some of the plaintiffs. Alfred Skinner had conveyed his undivided interest of one third in the lots Nos. 58 and 59, by the deeds aforesaid, to different persons; and afterwards, as it would seem, supposing that there was ground unconveyed lying between the west line of the addition and the middle of the channel of the creek of Chouteau's pond, or that his previous deeds to those persons were inoperative and void, made a deed to John W. Skinner, one of the plaintiffs, conveying his undivided interest of one third in a larger tract so bounded as to include a portion of the lots Nos. 58 and 59, bounded on the east by the supposed west line of Reilly's addition, and west by " the middle of the natural channel of the creek of Chouteau's pond as it existed when Alfred Skinner acquired said tract"; that is, lot No. 3 of the Chouteau partition. And so, if the deeds conveying lots 58 and 59 were valid, and called

for the middle of the channel as their western boundary, it would follow that the plaintiff Skinner had no title to. the land in controversy. He contends that these were lots of the addition, and that the addition did not go to the middle of the channel. He insists, also, that these deeds were void, as being an attempt of one tenant in common to convey a distinct part of the whole tract in common, by metes and bounds, before any partition. The court instructed the jury for the defendant, to the effect, that if these deeds were genuine, the plaintiffs could not recover for the land embraced in them bounded west by "the middle of the channel of the creek of Chouteau's pond, when the pond is exhausted"; and also, that if the jury found from the evidence that the plaintiffs were entitled to any part of the premises sued for, they would find for the plaintiffs, and specify that part in their verdict, with the monthly value and damages.

For the plaintiffs, the court refused to instruct the jury, that the deeds, purporting to convey the undivided interest of Alfred Skinner in particular lots in a larger tract held in common with John P. Reilly, undivided, were void as against the heirs of Reilly, plaintiffs here; and also refused to instruct, that "the middle of the channel of the creek in its natural bed" meant the course of the stream prior to any artificial change made in the course of the stream (if any were made); and further, in effect, that this call fixed the boundary as it was in 1832, in the description of lot No. 3 of the Chouteau partition.

It may be conceded that the rule of law is well established, that one tenant in common cannot convey, by metes and bounds, a distinct portion of the whole tract held in common with others, so as to prejudice his co-tenants or their assignees, though it would bind him, and those holding under him, by way of estoppel, and that his deed would be inoperative and void as against them, and those holding under them, though it would be valid and effectual as against himself, and all those claiming under him—4 Kent Comm. 358; 1 Greenl. Crui. Dig. 402, n. (1) ; 1 Washb. Real Prop. 417;

Bartlett v. Harlow, 12 Mass. 348; Duncan v. Sylvester, 24 Me. 482; Griswold v. Johnson, 5 Conn. 363; Jewett v. Stockton, 3 Yerg. 492;—though this rule is not adopted in the State of Ohio—White v. Sayer, 2 Ohio, 302; Prentiss Case, 7 Ohio, 129. The principal reason is, that such deed breaks the unity of possession, and impairs the rights of the co-tenants in respect to partition. But where several persons are tenants in common of separate and distinct parcels of land, one of them may convey all his undivided interest in the whole of any one of the distinct parcels; and his deed will be valid and effectual against his co-tenants—Carroll v. Norwood, 1 Har. & J. 100. And such, we think, is the present case. It appears that the whole tract or lot No. 3 was laid off into an addition to the city of St. Louis by one of the two tenants in common, and divided into squares, streets, alleys, blocks and lots, and the streets and alleys were dedicated to public use according to a plat which was duly acknowledged and recorded by him; and the other tenant in common recognized this addition and plat, and made deeds of his undivided interest in the several lots of the addition as distinct parcels of ground. These acts of the parties had the effect to make a division among themselves of the whole tract into several and distinct parcels of land; and they became tenants in common of each parcel or lot by itself.

These deeds, then, had no tendency to break the unity of possession, nor to injure the rights of partition in these several lots; and not being within the reason or the principle of the general rule, they must be held to have been valid and effectual against the co-tenant, as well as against the grantor, and all those holding under him. We think the instruction on this point was properly refused—Holmer v. McGee, 27 Mo. 597.

A deed which calls for the middle of the channel of a fresh water river, or a stream expanded into a pond, makes a boundary which is in its very nature a shifting, and not a fixed landmark. The addition of the words " when the pond is exhausted" does not change the meaning of the call.

Whether taken in the present or the future tense, it is all the same thing; for as the natural channel shifts by slow degrees, the boundary called for imperceptibly changes with it—Ang. Water C. § 57. When the stream or pond was exhausted of water and became dry land, the *filum aquæ*, or thread of the channel, became then a fixed boundary, and not before. Doubtless, when the call is for a *pond* merely, or for metes and bounds along the bank of a river, the margin of the pond at low water, or the edge of the bank, on many authorities, is to be taken as the boundary—2 Crui. Dig. 336, n. But here the call is unequivocally for the middle of the channel. If it had been shown that there had been any sudden and violent change in the course of the stream, whether by the act of nature, or by the hand of man, whereby the bed of the stream was shifted wholly from its place and thrown upon another man's land, the case would have been different; but the evidence does not appear to have furnished any sufficient ground for the instruction which was asked by the plaintiffs on this point. There was no material error in the ruling of the court on this head.

The plaintiffs complain more especially of the first instruction that was given for the defendant. So far as it put a construction upon the deeds, and declared the legal effect of the evidence, it was unobjectionable. If the deeds were valid in law, and called for the middle of the channel on the west (as they plainly did on their face), they conveyed all the title and interest of Alfred Skinner in the land in controversy. That being so, the plaintiff Skinner had shown no title. The only remaining question there can be is, whether the plaintiffs as they stood upon the record were, upon that state of the evidence, entitled to recover. We think not; and so the instruction told the jury—nothing more. The statute provides that where one of two or more plaintiffs fails to prove any interest in the premises claimed, the others may still have such judgment as they are entitled to, according to their rights, for the whole, or any part thereof, as if they had sued separately—R. C. 1855, p. 692, § 10. And if the

plaintiffs' counsel had chosen to dismiss the petition as to the party who had shown no title, and had desired to proceed and have judgment in favor of the rest, according to the rights established, he might have done so ; but he could not have a judgment in favor of all the plaintiffs on the record. He had his election, and preferred to take a non-suit.

We find no error in the instruction.

Judgment affirmed. ˙ The other judges concur.